First case in our call this morning is agenda number 12, case number 108-313, David Cwik v. Alexi Giannoulias. May it please the court, my name is John Wiley. I represent the plaintiffs or the appellants in this case. This suit involves the Unclaimed Property Act. It is a companion to an earlier decision of this court, Cannell v. Topenka. There are three questions before the court, all certified by the trial court. The first question has to do with whether or not the retention of interest on unclaimed funds is a taking that requires compensation. The second question is how is that just compensation to be measured? And the third is whether the trial court properly certified the class. I'll take the second question first because that was the basis of the appellate court's decision in this case. The appellate court here said that the measure of just compensation depends on the use of the unclaimed property prior to the time it came into the state's custody. The court said that because the plaintiffs in this case failed to plead that they were receiving interest or expected to receive interest on that money prior to the time the state took it into custody, they were due nothing as just compensation when the state kept the interest that was earned while it was in custody. As a result, they said that the plaintiffs had no cause of action and therefore they also decertified the class. As we argue in our briefs, the appellate court, we believe, erred in applying that measure. The proper measure for just compensation is the market value of the property taken. In this case, the property taken is the interest that is earned while it's in state custody. That is private property pursuant to Morton Grove Park District case, an earlier decision of this court. The owner is entitled to whatever is earned on private property held in the government's custody. The measure that... The decision in this case, counsel... Pardon me? The decision in this case is a determination as to whether or not there's a taking. Isn't that correct? That's one of the questions, yes. And the second question then would be what measure of just compensation is. I'll address the takings question because Your Honor raised it. Do the plaintiffs ever plead that they may have gained interest income? Do they fail to plead that they were expecting interest income? I don't believe there's anything in the complaint that talks about whether or not they were getting income prior to the time that the state took custody of their property. That is correct, Your Honor. So how does the state's gain establish a loss on the part of the plaintiffs? Well, the state's gain is the same thing as the plaintiff's loss in this case. What did the plaintiff lose that he had before? The plaintiff lost the interest that was earned on property. A taking takes place when the government, in this case the state, uses private property for its own gain. That is a compensable taking under the Fifth Amendment and under the Illinois Constitution. In Morton Grove, the court here ruled that when money that was being held by the government earned interest, that the interest itself was private property and the retention of that was a taking, which required compensation. And in that case, the court said that the compensation should be the money that was earned. The court has said that the amount that was earned should be returned to the owner of the principal itself. Is the state entitled to any part of the interest? I don't believe so, Your Honor. Under Sperry v. Rand, the United States Supreme Court said that there could be a reasonable charge for holding the property, but that is not what's being done here. It's simply a taking of the entire interest that is earned in this case. Is the state required to invest the property in the proceeds? No, the state is not required to invest the property, at least under the Constitution. The Constitution requires, however, that if the government does invest it, the earnings, because the principal is private property, so too are the earnings. That's what the United States Supreme Court held in the Webbs Fabulous Pharmacy case. That's what this court held in the Morton Grove case. And in essence, that's what the court held in the Cannell case here also. There's really no juridical difference between the dividends in Cannell and the interest earned in the Swick case. Would the state be required to keep track of what interest rate was paid and for however long it was? In other words, how do they do that? Or is it like what the going rate of interest is? Well, essentially that's correct, Your Honor. In Hankles v. Sutherland, the United States Supreme Court faced the same kind of situation where the government was holding private property and used that to earn interest and kept the interest when the principal was returned. What the court said in that case is that because the money is pooled, just as it is in this case, you take the average rate earned on that pooled money and you apply that to the money that was retained for each particular person. It would be a simple thing to do that. I mean, a computer could calculate that by determining the date that the property was taken in, the date it was given back, and what the interest rates were during that period earned by the state on that money. Isn't that the difference in this case and Cannell? We know there now that dividends were produced, earned, and the exact amount could be determined. That is correct. But you're saying it takes an afterthought or after the fact to determine what was earned in this case. Well, it doesn't. It takes an afterthought in that sense in figuring out how much there is. It doesn't take an afterthought to know that the money was earning interest while in the state's custody. The state admits that. They make productive use of it. But it's a formulaic. You can use a formula basically to figure out how much is due each person. It's not a difficult thing. It's done all the time, and, you know, banks do it all the time. There's no reason why the state couldn't do it. As I said, it's a formulaic type thing. But there's no set interest rate, is there? There's no set interest rate. So does there have to be a determination in each class member's account as to what interest rate applies to them and what amount applies to draw the interest from? Well, you would, after, if I had property in there and I made a claim for it, the state would return my principal to me just as they do in all cases. Yes, and they did it in this case with both of the plaintiffs here. What the court in Hankel said is you simply find out what the interest rates were being paid during that period of time or earned on property and apply that to the property when it's returned. Mr. Wiley, there was a principle outlined in the Texaco case, and it states that the state is not required to compensate the owner for the consequences of his own neglect. And isn't that the situation here? For instance, it was not the state's action to cause the property to be placed in its hands. It was the plaintiff's action. So what's your response to this? Well, Texaco dealt with abandoned property. This is not abandoned property. This court in Cannell said it's not abandoned. It reaffirmed that in the Alvarez v. Pappas case just recently. The property remains at all times private property, and therefore whether the state could have declared it abandoned and taken it, which I don't think they can, but whether they could or not is really irrelevant in this case. It remains private property. The government is using that private property to gain interest, and the interest therefore should be private property as well. Is that the case of all the similarly situated class action plaintiffs, that the property was literally abandoned? There's been no finding of abandonment at all in any of this property. In fact, the state concedes the fact that the property's title never vests in the state. Now, Texaco also itself recognized that there are limits on the state's power to redefine interest even in abandoned property. One, it has to be a proper exercise of the police power. And two, you have to give due process. There was no due process here. There's certainly no hearing. The loss of the right to the interest is automatic and irrevocable. There are no means to challenge that. So that would be a violation right there of the Constitution as well. The police power, the state has a traditional right to define rights in property, either when it's abandoned or there is some reason for the state to exercise that power for the public health, safety, welfare, morals, and so forth. That is really not an issue in this case. There's certainly nothing immoral about it, having unclaimed property. There's no safety issue and so on and so forth. And that's really what this court held in Cannell also. It didn't address Texaco directly, but it also said that there's no common law basis to sever the interest or, excuse me, the earnings on property held under the Unclaimed Property Act from the owner's right to that property. So I think that that question has been answered. Texaco is, in my view, irrelevant because this is not abandoned property. And second, even if it was, there is no police power basis to exercise that authority here and there's no due process as well. So I think that Texaco is really irrelevant. Mr. Wiley, what's wrong with the appellate court's recognition that just compensation is based on the owner's loss rather than the state's gain? That is a correct statement of the law, Your Honor, but in this case they're the same thing. The state has gained $100 of interest, for instance, but that's the loss. Your Honor, before you answer, I think they just dovetailed from that recognition to say that since the owners wasn't getting any interest on their money, that there was no loss involved. It was merely a state gain once they started to get interest on the same monies. Well, that is correct. That's what the appellate court held. But what that does is imports the owner's idiosyncratic valuation of the property. It is not a market-based approach to just compensation, which for well over a century the United States Supreme Court and this court and every other court that I've ever seen has used to determine just compensation. So your response, then, is it's the market value of the property that is the loss, regardless of those monies not garnering any interest during the period that they were in the owner's possession? That's correct. It doesn't matter. Let's say there was $100 of interest earned while the state held it in custody. The value of that $100 is not dependent upon whether the owner of the principal had been investing the property before the state took custody. $100 of interest is worth $100, and that's what's taken. Now, that is the same thing as the state's gain. But in this case, as I said, the owner's loss and the state's gain are identical. But isn't the test really what have the plaintiffs lost? That's correct, Your Honor. That is a correct statement of the law, and the loss is the interest that was earned. But isn't the plaintiff entitled just to be put in the same position he was or to be made whole, but for having the property be in the possession of the state? Isn't that exactly what you're asking for, is to be made whole? That's right, Your Honor. And being made whole in this case would be giving back the principal, which is given back as well as the value of the use of the private property while in the state's hands. That's what the Fifth Amendment demands. Would you agree, though, that there's a certain logical appeal that if plaintiff's money was not earning any interest before it was remitted to the state, that plaintiffs wouldn't be entitled under a strictly logical approach to any interest that may have been earned once the state took custody of the money? With respect, Your Honor, I don't think that that follows, because of the definition of just compensation. And we look at the Supreme Court's approach to this, United States versus General Motors. During the war, the government came in and took over a warehouse. I think it was a warehouse that General Motors owned. They were not using it at all. But the government came in, occupied that property, and they were required to pay a fair market rental value for that property. General Motors had no expectation of earning anything on the property until the government took custody of it. The same thing was true in the other cases we cited, Boom Company and so forth. Whether a landowner lets the property lie fallow, doesn't use it at all to gain anything, has no expectation of using it to gain anything, if the government comes in and takes that property, they owe compensation for it. That's what the Fifth Amendment requires. That's what the Illinois Constitution requires as well. It's certainly true of the principle. The question is, is it true of interest it wasn't making any money, it wasn't being accrued at all until the state took some action and invested it? That is correct, Your Honor. The court in the Phillips versus Washington Legal Foundation case addressed that issue as well. In that case, the government said, well, we're the ones who created this interest. That was an argument that was made in the Webbs case as well. And in both cases, the Supreme Court said, no, it's not the government's action that is causing the interest to be earned here, it's the principle itself which is earning the interest. And so they rejected that argument. To follow up on that question, I think the basic problem I have is, can there be a taking of something that would not have existed but for the action of the government? Yes, Your Honor, because the takings clause protects private property from the government's use without compensation. Wouldn't the government simply not invest anymore? And that would take care of the problem. If they're not going to get the benefit of it, why would they invest and have the problem? Isn't that going to be the net result of your action? No, I don't think it is for two reasons. First, historically about a third of this property is ever claimed back. And so the government will have perpetual use of all of that money. Second, if the government has to pay for the use of it, it's like a borrowing. The government borrows money all the time and repays it and pays it back with interest. That's, in essence, what is happening here. So I don't think that the government is going to forego the right and the power to use this property during the time it's holding it. This is not going to be the end of the Unclaimed Property Act if they have to pay for it. Other states pay for it. In SOG v. ZERS, the Ohio Supreme Court in addressing the Ohio Unclaimed Property Act said the same thing. Look, if you're using private property, you're gaining interest on it. You have to pay for that interest. It's not a free ride. Isn't the fellow land example, you know, a farmer has a piece of land that may have a highest and best use for commercial real estate, for example, but hasn't put it to that use. And you're saying, well, still, if there's a taking, they're entitled to the highest and best use, right? Right. Right. The fair market value of the property. But isn't that still looking forward? I mean, I'm thinking of your example. The state doesn't go in on that taking and saying, oh, by the way, 10 years ago they could have converted this to commercial real estate and made X amount of dollars, and therefore we're not only going to pay them what the fair market value is now, the highest and best use is now going forward, we're also going to give them 10 years of monies where they could have invested that money. You see what I'm saying? I understand what you're saying. It seems like your example, your land example is looking forward, and the example before us is looking back. Well, I think that that question was addressed in the Morton Grove case. You're right that when the property is claimed and the property is not given back, the interest is not given back, that's when we claim a taking takes place, and you value property that is taken on the date of the taking. In Morton Grove, the court said, while the government is holding this property, it is earning interest. When it doesn't give it back, that's a taking, and the owner is entitled to whatever was earned in that period while it was being held. So I think that answers your question directly. The taking takes place on the date that the principal is returned without the interest. That's the date you value the interest. So I think that that – I hope that answers your question. Counsel, would you be in here asking or telling us that the state has a duty to invest if they did nothing? No, we do not assert that there was any duty to invest. The government can – and we have no problem whatsoever with the government taking this property into custody. And doing nothing. And doing nothing with it. If they want to hide it in a can out on the – across the street in the yard, we don't have a claim. The fact that the government uses the private property, though, that's exactly what the Fifth Amendment and Article I, Section 19 of the Illinois Constitution, say requires compensation. If I might – How would you respond to the state's suggestion that uninvested cash is just like jewelry laying around? It doesn't earn anything. Well, it has a possibility of earning, and that's really what the state is taking. The state is taking the use of that private property. A piece of jewelry obviously can't earn any interest. Cash can, and it does. And it is that interest which is actually earned, which is the – which is what is taken in this case. I see that my time is up. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court, Counsel. My name is Brett Legner. I'm an Assistant Illinois Attorney General, and I represent the defendants at police in this case. Your Honors, this Court should dismiss the plaintiff's claim in its entirety because they did not allege that any private property was taken within the meaning of the takings clauses of the U.S. Constitution or the Illinois Constitution. In the alternative, and as an independent ground to dismiss the claim, this Court should dismiss the action because the plaintiffs failed to allege that they were deprived of any – that they suffered any pecuniary loss, that they were deprived of anything by any state action. In the alternative, if this Court finds that there was an allegation of a taking and there was an allegation of a lack of just compensation, this Court should remand the matter to the appellate court to consider the class certification issue. Your Honors, the plaintiff's argument stands for the radical proposition that this Court should find a federal constitutional entitlement to interest earned on abandoned – presumed abandoned property, presumptively abandoned property. There's no question about what the statute does. The statute does – yes. So just to add your opponent's theory of the case, isn't it true that – I'm sorry. Let me proceed. Okay. There's no question about what the statute does, Your Honors. This statute declares certain property presumed abandoned after a certain amount of time. I'm sorry. Didn't your opponent find fault with that not being alleged in any complaint, that there was an abandonment? The plaintiff – the plaintiffs are trying to draw a false distinction between abandoned property and unclaimed property or presumed abandoned property and unclaimed property. The statute presumes abandoned property when, for the statutorily specified amount of time, the owner has exercised no use of that property. Well, counsel suggested that the Texaco case does not apply. Do you think it does? Absolutely, the Texaco. The Texaco case is absolutely on point, as has been recognized by virtually every other court, to analyze the substantively same statute. The Simon case in the Third Circuit, the Ninth Circuit, the state courts in Indiana, North Carolina, Texas, California, and Louisiana have all applied the Texaco principle to determine whether the retention of interest on unclaimed property is a taking. Absolutely, the Texaco principle applies. The courts have repeatedly and consistently found that it applies. The one court, the one court, that plaintiff cited that did not find that Texaco applies to this exact situation was the Ohio court in Sogg v. Zers. In finding that Texaco did not apply in Sogg v. Zers, the Ohio court distinguished Texaco and the cases following it in a way that distinguishes that case from this case. The Ohio court said Texaco does not apply and the cases following Texaco do not apply because under the Ohio statute, unclaimed property is not presumed abandoned. That was the court's word, presumed abandoned. And, in fact, that phrase never appears in the Ohio Unclaimed Property Act. It never presumes abandoned unclaimed property. Illinois' Act, to the contrary, consistently and repeatedly presumes abandoned unclaimed property. Section 2, for instance, of the Illinois Unclaimed Property Act, 765 LCS 1025-2, property held by financial organizations, presumption of abandonment. The following property held or owing by a bank or financial organization is presumed abandoned. Illinois is a presumed abandonment statute. Same as all the other ones that have been analyzed by state and federal courts, all of which applied Texaco and found that there was no taking. And that's why plaintiff's proposition is so radical. Plaintiff asked this court to depart from all of those other jurisdictions, all of those other jurisdictions that have uniformly found that the Texaco rule applies to this very situation. Does it matter that in Texaco the forfeited mineral rights went to the owner of the service rather than to the state? No, Your Honor, it doesn't matter. It hasn't mattered to any of the courts that have applied Texaco to the same situation where the forfeited rights go to the state. For instance, the Simon Court, the Third Circuit decision, you know, dealing with the same type of statute. No, it doesn't matter. What's important and what's relevant from Texaco, the relevant principles from Texaco are that the state has the authority to condition an owner's retention of property rights on the continued exercise of those rights. The state has the authority to condition the retention of property rights on the continued exercise of those rights. So, for instance, the state has the authority, the constitutional authority to say, property owner, if you don't exercise property rights in this property for this amount of time, you lose some or all of those rights. That is constitutional. The state has the authority to do that. Could the state then not only say that the interest is forfeited but the property is forfeited? The state could do that. The state absolutely could do that. Illinois does not do that. In fact, Illinois takes all of the property in from all these disparate and varied holders. Most of these accounts which have been entirely forgotten about by the various holders. And Illinois acts as a clearinghouse. Illinois publishes notice. Illinois maintains a very detailed website. Illinois takes affirmative acts to return this principle to people, acts that would never be taken by the holders in the first place. Illinois doesn't have to do that. Illinois constitutionally could go further. But the fact that Illinois hasn't gone as far as it does doesn't mean that it's unconstitutional by exercising a subordinate power. Are there other states that have gone further? There are no other states that I'm aware of, Your Honor, that have gone further in the sense that the states have generally adopted some, virtually every state, I think actually every state has adopted some form of the Uniform Act for treating unclaimed property. And under all of those, the state creates some system where they'll return the principle upon an app or some form of the principle upon an application. I know it's not our case here, but so the constitutionality of taking the principle as well has not been tested. Is that a fair statement? I don't think so, Your Honor, in the sense that other United States Supreme Court cases, which we certainly cite, stand for the proposition that when a property has been abandoned or is derelict or however you want to define it, the state can take the entire amount. These are the bona fide conjure principles or the state sovereignty principles that are underlying all of this. In fact, in fact, in Texaco, the Supreme Court quoted a Supreme Court case called Hawkins v. Barney's Lessee. This is in footnote 19, footnote 19 of Texaco. And in footnote 19 of Texaco, in that quote from Hawkins, the Supreme Court stated that the right to appropriate a derelict is one of universal law, well known to the civil law, the common law, and to all law. It existed in a state of nature. The court was talking broadly about the state's right to appropriate the entire bundle of property rights, if you will. These statutes don't do that. So in the sense that going that far hasn't been tested in the context of an unclear property claim, but it certainly has been approved in the other cases, such that we cite dealing with the extent of the state's rights to define property rights in abandoned property. And as this Hawkins quote makes clear. Do you think that there has to be a finding of taking like under Cannell? There's a finding of this with the appellate court that it had found that there was a taking. Do you think that's necessary in this case? No, I think there was no taking. In fact, I think that's our primary point, Your Honor, that there was, in fact, no taking in this case. The appellate court erred when it answered the certified question in that regard. Cannell is distinguishable under the application of the principles of Texaco, where, as Your Honor stated before, the state does not have to compensate an owner for the consequences of its own neglect. There is no state action when a state creates a statute that says, if you don't exercise your property rights in this property, they will lapse or some part of them will lapse after a certain amount of time. If an owner lets them lapse, there is no state action. That is the owner's action. If there's no state action, there's no taking. There's absolutely no taking. And that's what, for instance, the Simon court found. In the other state courts, they find there's no taking under Texaco principles, no taking at all. So that's the first and best answer to the questions posed by this case. There was no taking. We don't even get to the just compensation issue, which brings me to the next point, which is there are two discrete independent elements to a Fifth Amendment takings claim. First, there has to be a taking of private property by the state within the meaning of the amendment. And second, there has to be a failure to pay just compensation. Here, claims didn't allege either. First, they didn't allege a taking of private property under the Texaco principles. And second, they didn't allege that they were denied any or that they suffered any pecuniary loss. So they fail on two. Those are both independent grounds. Before you get to whether they're entitled to just compensation or how do we measure that, we first have to determine whether there's a taking. And there absolutely was not in this instance. Now, how can you justify if people that own stocks or mutual funds and they are in the custody of the treasurer, when they're returned the owner gets the dividends and interest. How come it's different for this kind of property and why should it be? Okay. This Court in Connell recognized that dividends and interest are treated differently in that they are inherently different animals, for lack of a better word. A dividend accrues automatically when you purchase a share of stock. When you purchase a share of stock, you're essentially paying a somewhat inflated price because one of the things you're buying of that proprietary share of the corporation is the right to future dividends. The plaintiff doesn't have to do or the stockholder doesn't have to do anything to accrue dividends. They come automatically. They're an essential part of that share of stock. That's absolutely not true with interest. Interest doesn't automatically accrue on property. You have to do something. You have to do something for interest to start accruing. That was the basis that Simon distinguished Connell, the Third Circuit, and Simon distinguished Connell on that ground. Also, other courts have distinguished Connell because it, in fact, did not discuss Texaco and the Texaco principles. Isn't it? If we, on your first point about there's no taking. Yes, Your Honor. If we, to find there was no taking, would we have to overrule Connell? No, Your Honor. This Court made certain, made clear to limit Connell to the dividends question. The dividends question, as opposed to, as explicitly opposed to the interest question. This Court, at multiple points in Connell, said, again, today's decision is limited to the questions of dividends, dividends which cannot be separated from stock. It did not address the interest point. Connell does not have to be overruled. It is just separate. It just does not go to this case. Isn't it true that under Connell the stock represents ownership interest? So if you possess or you have an ownership interest in the stock, then you have the right to the dividends. By cash, it's whoever possesses the cash has, possesses the interest or the ownership of the cash. That's true. And so if the cash is in someone else's hands, that person has indicia of ownership. Just like if it's, the two are in a safety deposit box. That's true. The stock is in the safety deposit box and there's dividends and the ownership is accrued to that. But with cash, it's whoever owns the safety deposit box. That's absolutely right, Your Honor. And that plus the requirement of the Affirmative Act for cash to make it an interest, whereas there is no Affirmative Act necessary with a share of stock to make it a dividend. You know, show why or establish why that you are in very different situations, distinguishable situations. Now, it's also important to note that under the Illinois statute, the owner of the property, the abandoning owner of the property, retains a, one of the various property rights. There are multiple property rights on property. Under the Act, the state gets the right to interest. The state also gets the right to liquidate that property. The state has the right to possess that property. The state has the right to dispose of property. For instance, if there's contraband or something that may have no value, that it is then not required to sell under the Act. The only property right that's retained by an owner of property is the right to repossess certain property, the actual principle. But again, if the plaintiff left, for instance, in a safe deposit box, costume jewelry, and the state liquidates that, the plaintiff doesn't have a right to get costume jewelry back. The state has exercised property rights. It's property rights to dispose of that property, to liquidate that property. And the Indiana court in Smyth recognized that that, in fact, is a very important property right that the state gets in these Acts. So it's not the case simply that a plaintiff retains all of its property rights. The property owner would be due whatever the state recouped as a result of selling the costume jewelry? That's correct. That's correct. In Illinois, for instance, the treasurer holds an auction. And now the auctions are on the eBay website. And whatever was, you know, whatever was gained from the sale of that minus the statutory fee and any other cost to be deducted from that, the property owner would get to recoup. Mr. Langer? Yes. Let's go back to Justice Garmon's questions and the first proposition of your argument that there's no taking here. I understand the distinction between the characterization of the property, but do we – how does the Connell opinion impact the question about whether there is or is not a taking? Not just the distinction between the property, that there's an automatic right of interest on stock and so forth if the corporation pays it, but does it at all impact the calculus on is there a taking or not? No, Your Honor. Connell looked at the situation in the context of dividends and recognized that in that context the state – and again, before the state liquidated the stock, for the time that the state took the shares of stocks and dividends accrued, the state was simply acting as a custodian and it was a custodial statute. At that time, there were no, you know, property interests being exercised by the state. Taking really wasn't an issue. Taking really wasn't an issue in that situation. That is very different from the present situation. And the other question I've got is on – your opponents say this really isn't abandoned property. And you – you know, there's the phrase unclaimed and there's abandoned. Do you equate the two as the same, unclaimed and abandoned, or not? I think – I think it's a semantic game that doesn't need to be played necessarily. Different courts can define it differently. But it's clearly presumed abandoned. It is declared abandoned under the plain language of the Illinois Constitution. At that point, the state's longstanding rights to define property interests in that property or to make some use of that property come into play. And that is the first – the principal, basic, fundamental step that all of plaintiffs' authorities ignore. They never go into a situation of abandoned property or derelict property. But that's the essential gateway through which everything else has to proceed. That's the gateway through which the statute was enacted and through which the state – the state actually acts. Counsel, in his argument, raised certain problems, saying, well, there's no due process rights or it has to be an exercise of the police power. Both of those propositions were explicitly, in fact, rejected in Texaco. In Texaco, the court found that when a state conditions the retention of property rights, it has – it is a legitimate exercise of its power to do so. It is a legitimate exercise of the state's power to make – to ensure that property is used and not derelict. And that interest or revenue, state revenue, is gained from that property. The state – the court – the U.S. Supreme Court in Texaco also found that there was no due process violation because the statute itself gave adequate notice to owners that they have to do something to retain their rights. The Unclaimed Property Act provides that same notice. In addition, Section 12 of the Unclaimed Property Act requires the treasurer to give notice when property is turned over. There's certainly no lack of notice in this case. And both of those arguments were explicitly rejected by the U.S. Supreme Court in Texaco. It's important to keep in mind that the plaintiffs purport to bring their argument – Your Honor, as I see I'm out of time, may I briefly conclude? It may take less than a minute. Go ahead. I can definitely do that. Thank you, Your Honor. The plaintiffs frame their argument as under the U.S. Constitution and the Illinois Constitution. But they offer no reason why the Illinois Constitution is not construed in lockstep with the U.S. Takings Clause. Under U.S. Takings Clause jurisprudence, there is absolutely no taking in this case. Texaco applies, as has been held by every other court, to address presumed abandoned property in an unclaimed property statute. Thank you very much, Your Honors. Property under the Unclaimed Property Act is not abandoned property. That's what this Court held in Cannell. In fact, in Cannell, if I may quote it, this Court wrote, We know of no common law rule which supports defendant's position that by virtue of plaintiff's presumed abandonment of his property, the dividends declared as an incident of ownership of the property become the property of the state. At the same time, the state in their brief says, and I quote, Illinois does not take title to unclaimed corpus under the Unclaimed Property Act. If the state does not take title to it, how can it be abandoned? Abandonment means the relinquishment of title. The owners of unclaimed property at all times, as this Court has recognized and as the Ohio Supreme Court recognized in SOG, retain ownership of that property. Counsel, then why does the word presumed in the statute? Well, I would respond with a question is why doesn't it say abandoned property as opposed to presumed abandonment? They are treating it. Both words are there. Pardon me? Both words are there. That's correct. There is a phrase that says presumed abandoned, which means that they presume that maybe it will be abandoned. But in order to take title to abandoned property, the state has to go. You're saying that they actually take title to the cash? No, they do not take title to the cash. They do not take title to any unclaimed property. If they want to take title to the property, they can file an action, a forfeiture in the circuit court and get a judgment that says we now own that property. That's what this Court held in Cannell. There is no relinquishment of title. And I would like to address your suggestion earlier, Justice Burke, also, that whoever possesses the property owns the interest. The rule is whoever owns the property also owns the interest. Interest follows principle. So the owner of the principle owns the interest. That's what the holding in Webbs was. That's what the holding, excuse me, in Morton Grove was. That's what the holding in the Phillips case was for the U.S. Supreme Court. So it's not a question of who possesses it. If it was simply possession, then none of those cases would have come out the way they did. The owner of the principle, in this case it is the owner of the unclaimed property, also owns whatever is earned on that property. That may be true in dividends and stocks because there is an ownership interest that's recognizable. But in cash, whoever possesses it, it's a little different. There is no recognizable ownership except you possess it. Well, with respect, Your Honor, I disagree with that. The state at all times recognizes an owner of that property. They keep records of it. They keep a record that if you had your bank account turned over to the state, you can claim it, and they know what property was taken in. So they recognize that it's owned by the individual who owned it prior to the time the state took custody of it. So it's not a question of the property being abandoned. Title doesn't change. The state knows who owns it. The interest that might accrue, but the cash itself doesn't generate any kind of interest, unless somebody does something with it. That's correct, Your Honor. When the state uses that property, using private property is the language used in the Fifth Amendment. When the state uses private property for its benefit, it has to pay compensation for it. Is there any case, counsel, that says that a title has to transfer before a property can be declared abandoned? Well, I think title transfers when there is a declaration of abandonment. That's what the Cannell case said. The Cannell case said title has not changed in this case, and the state admits that in this case. And that's what the appellate court in this case said as well, and that's what the Sag case said in Ohio. Was the Cannell case limited to dividends? The Cannell case limited itself to dividends, but the language used in that is that unclaimed property is not abandoned. The court in its later Alvarez opinion said the same thing, making no distinction between dividends and cash. Now, I also want to point out, Justice Burke, that there was nothing in the record in Cannell which suggested that the stock in that case was earning dividends prior to the time it came into the state's custody. In fact, it was, but that was not part of the record, and so was not part of this court's decision in that case. What the court said in that case is that the dividends, as an incident of ownership, which is, by the way, the same language used by the Supreme Court in Webbs and in Phillips, and in this court in Morton Grove, as an incident of ownership, the dividends were private property as well. Of course, those other three cases, which use that same language, dealt with interest earned on private property. So if the legislature changed this and said that if you don't exercise any interest in property for five years, it is abandoned, would you be entitled to the interest? You would until there was a declaration that the property was, in fact, abandoned. That was the due process issue that I raised earlier. The state can't simply come along and declare that it is the owner of private property. It has to go through judicial channels and get a declaration that it, in fact, is abandoned property, and in that case they would have to show that there was an intentional relinquishment of that property before the state could take title to it. Texaco recognized that as well. I think that counsel was incorrect when it said that Texaco said that you don't need to follow due process. In fact, they said explicitly that before title can vest in this third-party owner that there has to be notice, a hearing, and so forth to make sure that you aren't taking property. There's Fuentes v. Shevin. Lots of other Supreme Court cases deal with the same issue, and, in fact, this court has held that repeatedly as well. The state simply can't declare that private property is public property. In fact, that's what the court said in the Cannell case. It said that the court knows of no common law standard by which the state can simply take title to property. Given the fact that the property is private property, just as in Webbs, just as in Cannell, anything that's earned, I hate to keep repeating myself, but anything that's earned on that is private property. The owner is the one who owns the private property that is earned on that. Now, I want to talk for one second also about these other cases, other states. It's not true that all states have adopted the state's position here. As I said, the Ohio Supreme Court came down firmly on our side with respect to the Ohio Unclaimed Property Act. In the Texas case, there was a subsequent case down there as well which said that once a plaintiff, they treated it as if the property was abandoned, something we don't do in this state. But after the claim has been made, anything that is earned on that property is private property and should be returned as well. I see I only have a couple more minutes. But if you treat presumed abandonment as the same thing as abandonment, then this Court's decision in Cannell would have to be reversed because that case said specifically it is not abandoned property. Title does not change. Once you recognize that it is held in custody, which the state admits, then anything that is earned on that property, interest, dividends, whatever, is also private property. And once you keep private property, you are engaging in a taking. Justice, I would like to address your question as well. You said, did Cannell say that there was a taking? Yes, it did say there was a taking. It said that the stock was privately owned. As a result, the dividends, as an incident of ownership, were also private property and had to be returned. And it sent the case down for a determination of just compensation. So taking was a central issue in that case. In fact, that was the decision in that case, that there was a taking. Just as there is a taking in this case because you've got interest as private property that is being retained. As I said in my opening remarks, there is really no juridical difference between interest and dividends earned on stock. They are both private property and they are both being retained by the state. The question also came up as to whether or not the state could take title to the principle itself. Again, there has to be due process in that. And that was recognized by the uniform commissioners or the commissioners on uniform state law when they enacted their uniform, their draft uniform act. They said in their notes some states are trying to take title to the unclaimed property itself, but that would be unconstitutional because that would be a taking without a finding of abandonment. The council also raised this issue that said that Texaco was an example of the state's sovereign power, which is something similar to Bona Vacantia. I assume he means to cheat as well. Those issues were raised before this court in Cannell. They were soundly rejected. Those do not give the state the power to take title to either the unclaimed property itself or the earnings on that. In that case, it was dividends. In this case, obviously, it's interest. Unless the court has other questions, I think I'm through expounding. Thank you, counsel. Thank you very much. Case number 108-313 will be taken.